UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

WILFREDO BLANCO, and TERESA VARGAS,

                                  Plaintiffs,                  COMPLAINT

-against-                                ECF Case

THE CITY OF NEW YORK; DET. JAMES SOUTH, TAX        Jury Trial Demanded
NO. 905097; DET. MICHAEL DOMINGUEZ, SHIELD
NO. 7902; SGT. NICOLE TIRADO, TAX NO. 931332;
SGT. JUDGE; the individual defendants sued individually
and in their official capacity,

                                  Defendants.

------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 for the defendants' commissions of acts under color of law in violation of plaintiffs' rights under the First, Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

2.      Plaintiffs' complaints stem from incident(s) that began on or about November 20, 2013 and continued until on or about March 23, 2015.  During the incident(s), plaintiffs were subjected to a false arrest and imprisonment, excessive force, fabrication of evidence, malicious prosecution, retaliation for free speech, an unlawful search and seizure, intentional and negligent infliction of emotional distress, harassment, unconstitutional conditions of confinement, and to a deprivation of their constitutional, civil, and common law rights.

3.      During the incident(s), Mr. Blanco was held as a pre-trial detainee at New York County Central Booking and Rikers Island Detention Facility before he was released on

bail.  Mr. Blanco spent approximately 9 days in custody prior to being released on bail.  During the incident(s), Ms. Torres was released on her own recognizance.

4.      Defendants' actions were contrary to law, contrary to sound professional police practice, and contrary to the norms of a civilized society.  This complaint, arising from these outrageous and unlawful acts, seeks compensatory and punitive damages, costs, disbursements, and attorneys' fees pursuant to applicable federal civil rights law.

**JURISDICTION & VENUE**

5.      This action arises under the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

6.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b) in that, inter alia, the events giving rise to the claim occurred in the Southern District of New York.

**JURY DEMAND**

8.      The plaintiff demands a trial by jury on each and every one of his claims as pled herein.

**PARTIES**

9.      Plaintiff Wilfredo Blanco is a citizen of the United States and a resident of the State of New York, New York County.

10.      Plaintiff Teresa Vargas is a citizen of the United States and a resident of the State of New York, New York County.

11.      Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation organized under the laws of the State of New York.

12.     The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court.  At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitution and laws of the United States and the State of New York.

13.     At all relevant times herein, defendant James South was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

14.     At all relevant times herein, defendant South held the rank of detective.

15.     At all relevant times herein, defendant South's Tax Number was 905097.

16.     At all relevant times herein, defendant South's command was the Narcotics Borough Manhattan North.

17.     At all relevant times herein, defendant Michael Dominguez was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

18.     At all relevant times herein, defendant Dominguez held the rank of Detective.

3

19.     At all relevant times herein, defendant Dominguez' Shield Number was 7902.

20.     At all relevant times herein, defendant Dominguez' command was the Narcotics Borough Manhattan North.

21.     At all relevant times herein, defendant Nicole Tirado was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

22.     At all relevant times herein, defendant Tirado held the rank of Sergeant.

23.     At all relevant times herein, defendant Tirado's Tax Number was 931332.

24.     At all relevant times herein, defendant Tirado's command was the Narcotics Borough Manhattan North.

25.     At all relevant times herein, defendant Judge was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

26.     Plaintiff is unable to determine the actual first name, Shield and/or Tax Number of defendant Judge.

27.     At all relevant times herein, defendant Judge held the rank of Sergeant.

28.     At all relevant times herein, defendant Judge's command was the Narcotics Borough Manhattan North.

29.     The defendants are sued individually and in their individual capacities.

4

## STATEMENT OF FACTS

30.     On or about November 13, 2013, defendant SOUTH appeared before the Criminal Court of the City of New York and obtained search warrant number 1200-2013 (hereinafter referred to as "the search warrant."). The search warrant authorized the search of apartment 507 located on the fifth floor of 609 West 174th Street, New York, New York (hereinafter referred to as "the apartment"). The search warrant sought evidence of the sale and possession of heroin, and conspiracy to commit those crimes.

31.     The search warrant was based upon materially false information.

32.     On November 20, 2013, at approximately, 6:00 a.m. at and in the vicinity of the apartment, the defendants SOUTH, DOMINGUEZ, TIRADO, and JUDGE were part of a field team from the Narcotics Borough Manhattan North and executed the search warrant at the apartment.

33.     On November 20, 2013, at approximately 6:00 a.m., the plaintiffs were asleep inside of their bedroom inside of the apartment. On November 20, 2013, the plaintiffs Wilfredo Blanco, and Teresa Vargas were Hispanic Americans.

34.     While the plaintiffs were asleep, they were wearing very revealing attire, specifically, plaintiff Vargas was wearing underwear and a loose fitting top.

35.     On November 20, 2013, at approximately 6:00 a.m., without any probable cause to do so, the defendant officers falsely arrested and imprisoned the plaintiffs. During the arrest of the plaintiffs, they were handcuffed about the wrists with excessively tight handcuffs, they were not free to disregard any officers' communication, and they were not free to leave.

36.     During the execution of the search warrant, the defendants SOUTH, DOMINGUEZ, TIRADO, and/or JUDGE exerted excessive force against both plaintiffs by subjecting them to excessively tight handcuffs and unnecessarily pointing guns at plaintiffs.

37.     The plaintiffs complained to the defendant police officers that the handcuffs were excessively tight and that they needed them to be loosened.  The defendant police officers ignored plaintiffs' pleas to loosen the cuffs.

38.     Each of the defendant officers was present during, and participated in, plaintiffs' arrest.

39.     Plaintiff Vargas was hysterical at the unprofessional treatment she received from the individual defendants.  She was so terrorized by the defendant officers that she urinated on herself while she was handcuffed in side her living room.  Ms. Vargas has received mental health treatment for this injury.

40.     Defendant TIRADO and Defendant JUDGE were supervisory officers present during the execution of the search warrant at the apartment and authorized the arrest and prosecution of both plaintiffs.

41.     While plaintiffs were in handcuffs, the defendant officers searched them.  No contraband was recovered during this search.  No pre-recorded buy money was recovered during this search.

42.     After the plaintiffs were in handcuffs, the defendant officers searched the apartment.  Defendant SOUTH alleged to have recovered a small amount of heroin from inside of a dresser in the plaintiffs' bedroom.  Defendant SOUTH also alleged to have recovered an item he referred to as "crystal meth" inside of the dresser along with some Ziploc bags.  Finally,

defendant SOUTH alleged to have recovered $6,342 in United States currency that he attributed to narcotics trafficking.

43.     The plaintiffs were not present when defendant SOUTH claimed to have recovered this contraband.  The plaintiffs admitted to defendant SOUTH that the money belonged to them and that they were keeping it as part of a *Sous-Sous* savings program for other members of their community.

44.     Upon information and belief, defendant SOUTH intentionally misled his supervisors as to the location of the alleged heroin, "crystal meth", and Ziploc bags, in order to make it appear that both plaintiffs were in possession of the allegedly recovered contraband.

45.     Plaintiffs were eventually transported to an NYPD precinct in New York, New York and booked on charges of criminal possession of a controlled substance in the Third Degree (N.Y. Penal Law § 220.16), criminal possession of a controlled substance in the Fifth Degree (N.Y. Penal Law § 220.06, and criminally using drug paraphernalia in the Second Degree (N.Y. Penal Law § 220.30 for the alleged possession of heroin, prescription medication, and zip lock bags.

46.     Plaintiffs were eventually brought by police officers to Central Booking at 100 Centre Street.

47.     A felony complaint was filed against plaintiffs.

48.     After approximately 24 hours, plaintiffs were arraigned on the felony complaint.  For plaintiff Wilfredo Blanco, bail was set in the amount of 5,000 bond, or 5,000 cash with the condition that a 72-hour surety hearing be held to determine the source of the funds.  For plaintiff Teresa Vargas, she was released on her own recognizance.  The plaintiff

Wilfredo Blanco spent approximately 9 days in custody before bail was posted and he was released.

49.     The NYPD has formal polices, contained in its Patrol Guide, by which it authorizes the conduct of obtaining and executing search warrants, the arrest and prosecution of those involved in the sale of narcotics under specific guidelines, and the use of force against detainees.

50.     This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Complaint, a de facto policy and practice of obtaining and executing search warrants, the arrest and prosecution of those involved in the sale of narcotics under specific guidelines, and the use of force against detainees, other than those specified in the Patrol Guide or NYPD directives in order to meet productivity goals and quotas.

51.     Upon information and belief, while plaintiffs were incarcerated at the NYPD precinct and in New York Central Booking, awaiting arraignment, the officers who arrested them, acting in concert, and pursuant to a conspiracy, falsely and maliciously told the New York County District Attorney's Office that plaintiffs had committed various crimes, and based on the officers' false allegations, the New York County District Attorney's Office prosecuted plaintiffs in Court under Criminal Docket Nos. 2013NY088029 and 2013NY088030.

52.     Upon information and belief, the officers who arrested plaintiffs maliciously withheld relevant information from the New York County District Attorney's Office, showing that either or both of the plaintiffs were innocent of all charges.

53.     Plaintiff BLANCO was forced to hire a private attorney in order to defend himself against the false allegations that were brought against him.

54.     Thereafter, defendant SOUTH testified before a grand jury convened in the County and State of New York investigating the alleged narcotics transactions.  SOUTH, acting in concert with the other defendant officers, and pursuant to a conspiracy, falsely and maliciously told the grand jury that the plaintiffs had committed various crimes and/or withheld materially relevant information that would have indicated that one or both of the plaintiffs were innocent of the crimes.  Based on the officer's allegations, the grand jury indicted the plaintiffs under Indictment Number 5157-2013 for the crimes of Criminal Possession of a Controlled Substance in the Third Degree, in violation of Penal Law § 220.16(1) and Criminally Using Drug Paraphernalia in the Second Degree, in violation of Penal Law § 220.50(2).

55.     Thereafter, a jury trial was held and on or about March 23, 2015, all charges against plaintiffs were dismissed and sealed.

56.     The above-stated malicious prosecution was initiated without probable cause to believe that the prosecution would be successful and without regard to plaintiffs' innocence.

57.     The above-stated malicious prosecution was initiated with malice because it was not based upon probable cause.

58.     The above-stated malicious prosecution terminated in plaintiffs' favor when the charges were dismissed and sealed against both plaintiffs.

59.     The above-stated malicious prosecution caused a significant post-arraignment liberty restraint on plaintiffs, namely the period of time that Mr. Blanco spent incarcerated and the numerous appearances that both plaintiffs were required to make before the charges were dismissed and sealed.

60.     Upon information and belief, the arrest of the plaintiffs was motivated wholly or in part by the individual defendants' need to meet quantitative enforcement "productivity goals" promulgated by the defendant City of New York.

61.     Upon information and belief, the arrest of the plaintiffs was motivated wholly or in part by the individual defendants' need to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of defendant City of New York's police department.

62.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may be inferred as a finding of fact when, on June 24, 2010, the court in *Floyd v. City of New York*, United States District Court, Southern District of New York, 08 CV 1034, ordered the release of documentation in the possession of the defendant New York City Police Department's Internal Affairs Bureau, which investigates claims of serious misconduct and corruption of members of the NYPD.  The court held that the plaintiff in that case, in order to prove the existence of unconstitutional arrest quotas, had overcome the law enforcement privilege due to the strong public interest in uncovering the civil rights violations alleged in the Complaint, and by demonstrating a compelling need to review such documentation.

63.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy was confirmed as a finding of fact when, on February 18, 2011, the jury in *Bryant v. City of New York*, Kings County Supreme Court Docket #022011/2007, found that the plaintiff in that case's arrest had resulted from a policy "regarding the number of arrests officers were to make that violated plaintiff's constitutional rights and contributed to her arrest" imposed by defendant City of New York.

64.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may additionally be inferred from repeated occurrences of similar wrongful conduct, as documented in lawsuits including but not limited to the following civil rights actions filed against the City of New York:

   a.   *Alvin Williams v. The City of New York, et al.*, United States District Court, Southern District of New York, 05-cv-4013.

   b.   *Corey Williams v. The City of New York, et al.*, United States District Court, Eastern District of New York, 07-cv-5362.

   c.   *Joseph Malachi LaDoucier v. The City of New York, et al.*, United States District Court, Southern District of New York, 10-cv-5089.

65.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on November 8, 2010, that commanders are permitted to set "productivity goals."[1]

66.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn.  *See* fn1.

67.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by WABC-TV/DT, including,

---

[1] Fanelli, James, "Cops at Brooklyns Crime-Ridden 77th Precinct Told to Meet Quotas for Moving Violations, Memos Say," New York Daily News, November 8, 2010.  Article incorporated by reference herein and available online at http://www.nydailynews.com/ny_local/2010/11/08/2010-11-08_cops_told_to_meet_quotas.html.

among other admissions, a 41[2] precinct sergeant explaining that each of his officers is held to a twenty summons per month and one arrest per month enforcement quota, as reported by the media on March 3, 2010.[2]

68.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make "special" arrests as directed by their superiors even if they must void the arrest at the end of their shifts, as reported by the media on May 11, 2010.[3]

## FIRST CLAIM

### (FALSE ARREST / UNLAWFUL SEARCH AND SEIZURE)

69.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

70.     Defendants falsely arrested plaintiffs without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime.

71.     Defendants unlawfully searched plaintiffs and seized them after their unlawful search returned no results for contraband or firearms.

---

[2] Hoffer, Jim, "NYPD Officer Claims Pressuer to Make Arrest," WABC News, March 3, 2010. Article incorporated by reference herein and available online at hhtp://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

[3] Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into a Ghost Town."  Village Voice, May 11, 2010. Article incorporated by reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/

72.    Accordingly, defendants are liable to plaintiffs for false arrest and unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

## (EXCESSIVE FORCE)

73.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

74.    The individuals use of force upon plaintiffs, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable and caused plaintiffs pain and injury.

75.    Accordingly, defendants are liable to plaintiffs for using unreasonable and excessive force 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## THIRD CLAIM

## (DENIAL OF THE SIXTH AMENDMENT RIGHT TO A FAIR TRIAL)

76.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

77.    Defendants are liable to plaintiffs because they created false information likely to influence a jury's decision and forwarded that information to prosecutors, violating plaintiffs' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under the Sixth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## FOURTH CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

78.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

79.     Defendants are liable to plaintiffs because they agreed to act in concert to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiffs.

## FIFTH CLAIM

### (42 U.S.C. § 1985 CONSPIRACY)

80.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

81.     Defendants are liable to plaintiffs because they conspired against plaintiffs based on racial or other invidiously discriminatory animus for the purpose of depriving plaintiffs of equal protection of the privileges and immunities under the law, and committed an act in furtherance of the conspiracy, which injured plaintiffs.

## SIXTH CLAIM

### (MALICIOUS PROSECUTION UNDER FEDERAL LAW)

82.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

83.     Defendants are liable to plaintiffs for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution against plaintiffs by knowingly, intentionally, and maliciously providing false statements to prosecutors and/or the criminal court(s), which alleged plaintiffs had committed various crimes;

and based upon these false statements, prosecutors prosecuted plaintiffs until the case against plaintiffs were dismissed in their entirety.

84.    The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

85.    The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

86.    The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiffs.

## SEVENTH CLAIM

## (42 U.S.C. § 1983 AGAINST ALL DEFENDANTS)

87.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

88.    All of the aforementioned acts of the defendants, their agents, servants, and employees were carried out under the color of state law.

89.    All of the aforesaid acts deprived plaintiffs of their rights, privileges, and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

90.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officer, with all of the actual and/or apparent authority attendant thereto.

15

91.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

92.     The defendant police officers and defendant City of New York, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

93.     As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, they were arrested, and they were humiliated, without probable cause.

94.     As a result of the above constitutionally impermissible conduct, plaintiffs were caused to suffer violations of his civil rights, emotional distress, anguish, fear, humiliation, loss of freedom, legal expenses, and damages to his reputation and standing within his community.

95.     As a result of defendants' impermissible conduct, plaintiffs demand judgment against defendant sin a sum of money to be determined at trial.

## EIGHTH CLAIM
### (MUNICIPAL LIABILITY UNDER *MONELL*)

96.     Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

97.    Defendants arrested and incarcerated plaintiffs in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiffs' liberty and well-being, safety and constitutional rights.

98.    The acts complained of were carried out by the aforementioned individual defendant police officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

99.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officer and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

100.    The aforementioned customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

    a.    Wrongfully arresting innocent persons in order to meet quantitative "productivity goals" (i.e. arrest quotas).

101.    The particular arrest of the plaintiffs is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because they were undertaken in the absence of probable cause to arrest.

102.    The particular arrest of the plaintiffs is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because it was undertaken in a manner which indicated that the individual defendant officers who

17

participated in the plaintiffs' arrest made the determination to search and arrest plaintiffs before determining why the plaintiffs should be searched and arrested.

103.    The particular arrest of the plaintiffs is believed to have been motivated in whole or in part by the aforesaid unconstitutional arrest quota custom and/or policy because the plaintiffs were arrested despite the fact that probable cause to search or arrest an individual is not met by obtaining a search warrant by submitting materially false information to the "neutral magistrate" and misleading and/or withholding materially relevant information about the location of the alleged narcotics' recovery.

104.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department evinced a deliberate indifference to the safety, well-being and constitutional rights of plaintiffs.

105.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate causes of the constitutional violations suffered by plaintiffs as alleged herein.

106.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiffs as alleged herein.

107.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiffs were falsely arrested and incarcerated.

108.    As a result of the above constitutionally impermissible conduct, plaintiffs were caused to suffer a violation of his civil rights, emotional distress, anguish, anxiety, fear,

humiliation, loss of freedom, legal expenses, and damages to their reputation and standing in their community.

109.    As a result of defendants' impermissible conduct, plaintiffs demand judgment against defendants in a sum of money to be determined at trial.

## NINTH CLAIM
## (EQUAL PROTECTION UNDER 42 U.S.C. §§ 1981 AND 1983)

110.    Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

111.    At all times described herein, the plaintiffs were possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

112.    Defendant police officers arrested and incarcerated plaintiffs in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize plaintiffs' liberty, well-being, safety, and constitutional rights.

113.    The acts complained of were carried out by the aforementioned individual defendant police officers in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

114.    Plaintiffs were falsely accused of crimes and violations and was taken into police custody and detained against plaintiffs' will.

115.    Following their arrest, plaintiffs were charged with crimes and violations.

116.   The above-described charges were a pretext intended to justify the plaintiffs' illegal arrest.

117.   The actions of the defendant police officers heretofore described, constituted unlawful detention, imprisonment, and malicious prosecution and were designed to and did cause pain and suffering both in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §§ 1981 and 1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

118.   As discussed by the court in *Brown v. City of Oneonta*, 221 F.3d 329 (1999), the existence of an equal protection violation may be confirmed by a finding that a similarly situated group of non-minority individuals is treated differently.  That is, the plaintiff must allege that a government actor intentionally discriminated against them on the basis of race.

119.   On March 1, 2010, the New York Times published an Op-Ed piece entitled "Watching Certain People," wherein the author cited to New York City Police Department Statistics showing that of the 2,798,461 stops made by police officers during the years 2004 through 2009, African-American men accounted for 1,444,559 of those stops, and Hispanics accounted for 843,817 of those stops, or 51.6 percent and 30.1 percent respectively. The vast majority of those stopped, 88.2 percent, were not guilty of any crime.[4]

---

[4] Herbert, Robert, "Watching Certain People," New York Times, March 1, 2010.  Article incorporated herein by reference and available online at:
http://www.nytimes.com/2010/03/02/opinion/02herbert.html?scp=7&sq=police%20stop%20frisk%20african%20american%20men&st=cse

120.    On February 22, 2011, the New York Daily News published an article citing New York Police Department stops for the year 2010, which numbered 601,055.  This figure marked a 4.3 percent increase from the year 2009, and African-American and Latino men account4d for approximately 85 percent of all stops.[5]

121.    The particular arrest of the plaintiffs is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as trespassing, resisting arrest, disorderly conduct, obstruction of governmental administration, and narcotics-related offenses in the absence of probable cause to arrest, due to perceived ease of prosecution of such minority individuals.

122.    The defendant police officers, through their actions, carried out a discriminatory application of such laws, driven by a discriminatory motivation of what might otherwise be facially neutral statutes due to a perceived ease of prosecution.

123.    As a result of the aforementioned conduct, the defendants have violated plaintiffs' constitutional rights to equal protection, and the plaintiffs are entitled to seek redress under 42 U.S.C. §§ 1981 and 1983, and are further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

124.    As a result of the above constitutionally impermissible conduct, plaintiffs were caused to suffer a violation of civil rights, emotional distress, anguish, anxiety, fear,

---

[5] Parascandola, Rocco, "New York Police Department Stopped More than 600,000 in 2010, the Highest Number Ever Recorded," February 22, 2011.  Article incorporated herein by reference and available online at: http://articles.nydailynews.com/2011-02-22/news/29442269_1_latino-men-fight-crime-new-yorkers

humiliation, loss of freedom, legal expenses and damage to their reputation and standing in their community.

125.    As a result of the defendants' impermissible conduct, plaintiffs demand judgment against defendants in a sum of money to be determined at trial.

126.    All of the foregoing acts by defendants deprived plaintiffs of federally protected rights, including but not limited to, the right:

       a.   Not to be deprived of liberty without due process of law;

       b.   To be free from seizure and arrest not based upon probable cause;

       c.   To be free from unwarranted and malicious criminal prosecution;

       d.   To be free from malicious abuse of process;

       e.   To receive equal protection under the law.

WHEREFORE, plaintiffs demand a jury trial and the following relief jointly and severally against the defendants:

       a.    Compensatory damages in an amount to be determined by a jury;

       b.    Punitive damages in an amount to be determined by a jury;

       c.    Costs, disbursements, and attorney's fees, pursuant to 42 U.S.C. § 1988; and

(This Space Intentionally Left Blank)

       d.       Such other and further relief as this Court may deem just and proper,

including injunctive and declaratory relief.

DATED:      Brooklyn, New York
                 October 28, 2015

                                 _____

                              Michael P. Kushner, Esq.
                              KUSHNER LAW GROUP, P.L.L.C.
                              16 Court Street, Suite 2901
                              Brooklyn, New York 11241
                              (718) 504-1440
                              mk@kushlawgroup.com